IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
DETRIOT OFFICE

| | |
|---|---|
| TENNIE GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) JURY TRIAL DEMANDED |
| v. | ) |
| | ) |
| G. REYNOLDS SIMS & | ) |
| ASSOCIATES, P.C., | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

NOW COMES the Plaintiff, TENNIE GREEN, by and through her attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for her complaint against the Defendant, G. REYNOLDS SIMS & ASSOCIATES, P.C., Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. TENNIE GREEN, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Dewey, County of Washington, State of Oklahoma.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Bank of America (hereinafter, "the Debt").

6. The Debt was for a credit card, on which charges were incurred primarily for the personal use of Plaintiff and/or for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. G. REYNOLDS SIMS & ASSOCIATES, P.C., (hereinafter, "Defendant") is a law firm engaged in the collection of debt within the State of Oklahoma. Defendant is incorporated in the State of Michigan. Defendant's principal place of business is located in the City of Troy, County of Oakland, State of Michigan.

9. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV.  ALLEGATIONS

14. Upon information and belief, prior to May 1, 2012, Defendant had contact information for Plaintiff.

15. Upon information and belief, prior to May 1, 2012, Defendant had a telephone number for Plaintiff at which it could communicate with Plaintiff.

16. Upon information and belief, prior to May 1, 2012, Defendant had an address for Plaintiff at which it would communicate with Plaintiff.

17. On or about May 1, 2012, Defendant initiated a telephone call to Plaintiff's mother-in-law's residence in an attempt to collect the Debt.

18. On or about May 1, 2012, despite Defendant, upon information and belief, having contact information for Plaintiff, Defendant initiated a telephone call to Plaintiff's mother-in-law's residence in an attempt to collect the Debt.

19. On or about May 1, 2012, Defendant left a voicemail message at Plaintiff's mother-in-law's residential telephone number.

20. Plaintiff has never resided at her mother-in-law's residence

21. Plaintiff never provided Defendant with consent to communicate with third-parties.

22. Defendant, in the voicemail message left at Plaintiff's mother-in-law's residence, stated "[i]t is very urgent and important Tennie Green that you return my call right away to resolve this legal matter that has been placed here with your name on it."

23. Defendant, in the voicemail message left at Plaintiff's mother-in-law's residence, further stated "[i]t is in your best interest Tennie Green that you do return my call right away and that you do take care of this legal matter voluntarily."

24. Defendant in the voicemail message left at Plaintiff's mother-in-law's residence, left a telephone number at which Plaintiff could contact Defendant.

25. The telephone number left at which Plaintiff could contact Defendant was Defendant's telephone number.

26. At no time during the course of the voicemail message Defendant left at Plaintiff's mother-in-law's residence did Defendant state it was calling to confirm or correct location information for Plaintiff.

27. Plaintiff's mother-in-law heard the contents of the voicemail message Defendant left for Plaintiff.

28. Plaintiff's mother-in-law informed Plaintiff of the contents of the voicemail message Defendant left for Plaintiff.

29. Plaintiff also heard the contents of the voicemail message Defendant left for Plaintiff.

30. Upon information and belief, Defendant has not filed a lawsuit against Plaintiff for the Debt.

31. As of the date of filing of the present complaint, Plaintiff has not been served with a lawsuit filed against her relative to the Debt.

32. Upon information and belief, at the time of making the aforementioned threat, Defendant had no intention of filing a lawsuit against Plaintiff for the Debt.

33. Upon information and belief, Defendant has no authority to file a lawsuit against Plaintiff for the Debt.

34. Upon information and belief, at the time of making the aforementioned threat, Defendant had no authority to file a lawsuit against Plaintiff for the Debt.

35. Upon information and belief, at the time of making the aforementioned threat, Defendant did not have any employees that were licensed to practice law in the State of Oklahoma.

36. Defendant's representations to Plaintiff that a legal matter had been placed in Defendant's office and that Plaintiff had to contact Defendant immediately to voluntarily resolve the matter was false, deceptive and/or misleading given that at the time Defendant made the representation no lawsuit had been filed against Plaintiff relative to the Debt.

37. Defendant's representations to Plaintiff that a legal matter had been placed in Defendant's office and that Plaintiff had to contact Defendant immediately to voluntarily resolve the matter misrepresented the character, nature or legal status of the Debt given that at the time Defendant made the representation no lawsuit had been filed against Plaintiff relative to the Debt.

38. Defendant's representations to Plaintiff that a legal matter had been placed in Defendant's office and that Plaintiff had to contact Defendant immediately to voluntarily resolve the matter further had the effect of conveying to an unsophisticated consumer that if Plaintiff did not voluntarily pay the Debt to Defendant then additional collection efforts would be taken that would result in her paying the Debt involuntarily, i.e. by way of garnishment.

39. At the time Defendant made the aforementioned threat to commence garnishment proceedings against Plaintiff, no lawsuit had been filed against Plaintiff for the Debt.

40. At the time Defendant made the aforementioned threat to commence garnishment proceedings against Plaintiff, no judgment had been entered against Plaintiff for the Debt.

41. The Debt allegedly owed by Plaintiff is not a Debt that can proceed to garnishment without Defendant first having secured a judgment against Plaintiff for the alleged Debt.

42. On or about May 2, 2012, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the Debt wherein Defendant left a voicemail message for Plaintiff.

43. At no time during the course of the aforesaid voicemail message did Defendant state it was debt collector, attempting to collect a debt and that any information obtained would be used for that purpose.

44. At no time during the course of the aforesaid voicemail message did Defendant's duly authorized representative provide Plaintiff with information relative to Defendant's identity.

45. During the course of the voicemail message, Defendant's duly authorized representative stated she was "calling from the law firm regarding a legal matter that has been placed in my office with your name of it."

46. Defendant then stated on the voicemail message "[Plaintiff] it is urgent that you call me right back regarding this legal matter and resolve it voluntarily."

47. Defendant then reiterated "[i]t is in your best interest that you do return my phone call right away."

48. Defendant's duly authorized representative then left a telephone number at which Plaintiff could contact Plaintiff.

49. The telephone number left for Plaintiff was Defendant's telephone number.

50. Again, Defendant's representations to Plaintiff that a legal matter had been placed in Defendant's office and that Plaintiff had to contact Defendant immediately to voluntarily

resolve the matter was false, deceptive and/or misleading given that at the time Defendant made the representation no lawsuit had been filed against Plaintiff relative to the Debt.

51. Again, Defendant's representations to Plaintiff that a legal matter had been placed in Defendant's office and that Plaintiff had to contact Defendant immediately to voluntarily resolve the matter misrepresented the character, nature and/or legal status of the Debt given that at the time Defendant made the representation no lawsuit had been filed against Plaintiff relative to the Debt.

52. Again, Defendant's representations to Plaintiff that a legal matter had been placed in Defendant's office and that Plaintiff had to contact Defendant immediately to voluntarily resolve the matter further had the effect of conveying to an unsophisticated consumer that if Plaintiff did not voluntarily pay the Debt to Defendant then additional collection efforts would be taken against Plaintiff that would result in her paying the Debt involuntarily, i.e. by way of garnishment.

53. On or about May 2, 2012, Defendant then engaged in a telephone conversation with Plaintiff wherein Defendant attempted to collect the Debt from Plaintiff.

54. Defendant told Plaintiff that she had to make a payment to Defendant prior to May 18, 2012, in order to avoid legal action.

55. Subsequent to the parties having engaged in the aforesaid telephone call, on the next day, on or about May 3, 2012, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the Debt.

56. Defendant then told Plaintiff that she had until the close of business that same day, May 3, 2012, to make a payment to Defendant in order to avoid legal action.

57. Defendant's representation to Plaintiff made on May 2, 2012, that she had until May 18, 2012, to make a payment to Defendant in order to avoid legal action was false, deceptive and/or misleading given the next day Defendant informed Plaintiff she had to make a payment to Defendant by the close of business on May 3, 2012.

58. Defendant's representation to Plaintiff made on May 3, 2012, that she had until the close of business that same day to make a payment to Defendant in order to avoid legal action was false, deceptive and/or misleading given previously, on May 2, 2012, Defendant informed Plaintiff she had until May 18, 2012, to make a payment to Defendant to avoid legal action.

59. Defendant's conduct in informing Plaintiff on May 2, 2012, she had until May 18, 2012, to make a payment to Defendant in order to avoid legal action only for the next day, on May 3, 2012, to have Defendant contact Plaintiff and inform her that she had to make a payment to Defendant by the close of business that same day was unfair and/or unconscionable.

60. Despite having multiple contacts with Plaintiff and despite being fully cognizant of Plaintiff's location, on or about May 4, 2012, Defendant proceeded to contact Plaintiff's co-worker in a further attempt to collect the Debt.

61. On or about May 4, 2012, Defendant initiated a telephone call to Plaintiff's place of employment in a further attempt to collect the Debt.

62. Defendant's duly authorized then engaged in a telephone conversation with Plaintiff's co-worker.

63. Defendant asked Plaintiff's co-worker if she could speak with Plaintiff's manager.

64. During the course of the telephone call between Plaintiff's co-worker and Defendant, Plaintiff's co-worker informed Defendant that Plaintiff's manager was in a meeting.

8

65. Defendant's duly authorized representative then left her name and telephone number and informed Plaintiff's co-worker to have Plaintiff's manager contact her.

66. On that same day, Plaintiff's co-worker informed Plaintiff that someone had called Plaintiff's place of employment and requested to speak with Plaintiff's manager.

67. Plaintiff then looked at the name and the telephone number of the duly authorized representative of Defendant who had left a message for Plaintiff's manger to contact Defendant.

68. Plaintiff ascertained that Defendant was seeking to speak to her manger.

69. Plaintiff feared that Defendant would speak to her manger and tell her manager about the Debt on which Defendant was attempting to collect.

70. At the time Defendant contacted Plaintiff's place of employment, Plaintiff was employed for the Trust Division of a bank.

71. Plaintiff's place of employment has policies such that if an individual files for bankruptcy they can be terminated from the work place.

72. Plaintiff feared that if her manger was informed that she owed a Debt that it might also be grounds for termination from the workplace.

73. Due to Defendant's previous representations made to Plaintiff, Plaintiff's husband and Plaintiff's mother-in-law regarding the putative legal matter filed against her, Plaintiff feared that Defendant would also make similar false representations to her manager.

74. On or about May 4, 2012, at the time Defendant requested to speak to Plaintiff's manager, as delineated above, Defendant had no legitimate purpose to speak with Plaintiff's manager.

75. Upon information and belief, on or about May 4, 2012, at the time Defendant requested to speak to Plaintiff's manager, Defendant carried out the aforesaid conduct with the intent to harass and abuse Plaintiff.

76. Upon information and belief, on or about May 4, 2012, at the time Defendant requested to speak to Plaintiff's manager, Defendant carried out the aforesaid conduct in an attempt to coerce Plaintiff into making a payment to Defendant.

77. Defendant's conduct in contacting Plaintiff's place of employment when Defendant had no legitimate reason for doing so was unfair and/or unconscionable.

78. On or about May 4, 2012, subsequent to Defendant having contacted Plaintiff's place of employment, due to Defendant's conduct, Plaintiff spoke with the manger at her place of employment.

79. Plaintiff was forced to inform her manager of the reason why Defendant was calling her place of employment.

80. Plaintiff was upset, embarrassed and humiliated in having to inform her manager of the reason why Defendant was calling her place of employment.

81. In May 2012, subsequent to Defendant having contacted Plaintiff's place of employment, Plaintiff's manager then spoke to her supervisor as well as the Human Resources department at Plaintiff's place of employment regarding the manner in which Plaintiff's manger should handle returning Defendant's telephone call.

82. While Plaintiff's manager spoke to her supervisor as well as the Human Resources department at Plaintiff's place of employment, Plaintiff's manager had to explain to said individuals the reason why Defendant was calling Plaintiff at her place of employment.

83. Plaintiff was upset, embarrassed and humiliated that multiple individuals at her place of employment had to be informed of the reason why Defendant had contacted her workplace.

84. On or about May 7, 2012, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the Debt wherein Defendant left a voicemail message for Plaintiff.

85. Again, at no time during the course of the aforesaid voicemail message did Defendant state it was debt collector, attempting to collect a debt and that any information obtained would be used for that purpose.

86. Again, at no time during the course of the aforesaid voicemail message did Defendant's duly authorized representative provided Plaintiff with information relative to Defendant's identity.

87. During the course of the voicemail message, Defendant's duly authorized representative stated she was "calling from an attorney's office regarding a legal matter here in our office."

88. Defendant then stated on the voicemail message "[i]t is urgent that you call me right back regarding this legal matter with your name on it."

89. Defendant then stated it was doing an investigation on Plaintiff's file.

90. Defendant then reiterated that Plaintiff contact it back right away and that it would be in Plaintiff's best interest to call it back right away.

91. Defendant's duly authorized representative then left a telephone number at which Plaintiff could contact Plaintiff.

92. The telephone number left for Plaintiff was Defendant's telephone number.

93. Defendant then ended the voicemail message by, again, stating "[i]t is urgent that you call me right back."

94. Defendant's representations in the voicemail message, that it was calling regarding a legal matter and that it was conducting an investigation on Plaintiff's file, in conjunction with Defendant's failure to advise Plaintiff that it was a debt collector, had the effect of conveying to an unsophisticated consumer that Defendant's duly authorized representative who left the voicemail message was an attorney.

95. Upon information and belief, the individual who left the voicemail message was not an attorney.

96. Again, Defendant's representations to Plaintiff that a legal matter had been placed in Defendant's office and that Plaintiff had to contact Defendant immediately to resolve the matter voluntarily was false, deceptive and/or misleading given that at the time Defendant made the representation no lawsuit had been filed against Plaintiff relative to the Debt.

97. Again, Defendant's representations to Plaintiff that a legal matter had been placed in Defendant's office and that Plaintiff had to contact Defendant immediately to resolve the matter voluntarily given that at the time Defendant made the representation no lawsuit had been filed against Plaintiff relative to the Debt.

98. Again, Defendant's representations to Plaintiff that a legal matter had been placed in Defendant's office and that Plaintiff had to contact Defendant immediately to resolve the matter voluntarily further had the effect of conveying to an unsophisticated consumer that if Plaintiff did not voluntarily pay the Debt to Defendant then additional collection efforts would be taken that would result in her paying the Debt involuntarily, i.e. by way of garnishment.

99. On or about May 2, 2012, Defendant initiated a telephone call to Plaintiff's husband's cellular telephone in a further attempt to collect the Debt.

100. Defendant then engaged in a telephone conversation with Plaintiff's husband wherein Defendant told Plaintiff's husband that she owed the Debt.

101. Defendant then told Plaintiff's husband that Plaintiff was being sued relative to the Debt.

102. Plaintiff's husband then informed Plaintiff of Defendant's statements, as delineated above.

103. Defendant's representation to Plaintiff that she was being sued relative to the Debt was false, deceptive and/or misleading given that at the time Defendant made the representation no lawsuit had been filed against Plaintiff relative to the Debt.

104. Defendant's representation to Plaintiff that she was being sued relative to the Debt misrepresented the character, nature and/or legal status of the Debt given that at the time Defendant made the representation no lawsuit had been filed against Plaintiff relative to the Debt.

105. In its attempts to collect the Debt allegedly owed by Plaintiff, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

> a. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);
>
> b. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and stating that the consumer owes any such debt in violation of 15 U.S.C. §1692b(2);
>
> c. Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if

    otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

d. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

e. Placed a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of 15 U.S.C. §1692d(6);

f. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

g. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

h. Falsely represented either directly and/or by implication that he was an attorney and/or that the communication was from an attorney in violation of 15 U.S.C. §1692e(3);

i. Represented or implied that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action in violation of 15 U.S.C. §1692e(4);

j. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

k. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

l. Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

m. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

n. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

106. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V. JURY DEMAND

107. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TENNIE GREEN, by and through her attorneys, respectfully prays for judgment as follows:

    a.    All actual compensatory damages suffered;

    b.    Statutory damages of $1,000.00;

    c.    Plaintiff's attorneys' fees and costs;

    d.    Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**TENNIE GREEN**

By:    s/ David M. Marco
        David M. Marco
        Attorney for Plaintiff

Dated: June 7, 2012

David M. Marco (Atty. No.: 6273315)
LARRY P. SMITH & ASSOCIATES, LTD.
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail: dmarco@smithlaw.us