UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TENNIE GREEN, ) | |
| ) | |
|     Plaintiff, ) | Case No. 2:12-cv-12488-DML-MJH |
| ) | Magistrate Judge Michael J. Hluchaniuk |
| v. ) | Hon. District Judge Nancy G. Edmunds |
| ) | *REQUEST FOR ORAL ARGUMENT* |
| G. REYNOLDS SIMS & ASSOC., P.C., ) | |
|     Defendant. ) | |
| _____/ | |

# DEFENDANT'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION

i

## II. REPLY ARGUMENT

### A. *Plaintiff's Bank of America Platinum Plus Visa Credit Card Agreement Contained a Valid and Enforceable Arbitration Provision.*

Plaintiff argues that "[d]espite Defendant's bold assertion that Plaintiff is a party to the Agreement, it has provided no evidence to support this."[1] *See* Dkt. 13, p.4. This argument is confounding given the fact that Defendant has produced the Bank of America credit card agreement ("Agreement") which conspicuously identifies the Plaintiff by name at the top of the Agreement in enlarged, bold font.[2] Furthermore, Plaintiff attempts to promulgate her own legal standard by simply asserting that "surely [the Defendant] must demonstrate Plaintiff . . . signed the agreement." Plaintiff's argument not only blatantly runs afoul with the law, but also ignores the technological realities of modern credit card agreements. Today, many transactions are completed electronically or by phone, and as such, a signature is not necessary to evidence a debtor's assent to a credit-card agreement.[3] When the account is opened, the creditor has granted a right "to incur debt and defer its payment," and when the account is used, the creditor has allowed the cardholder "to defer payment

---

[1]   Plaintiff also argues that "[e]ven Defendant's own references to the debt Plaintiff allegedly incurred conflict [. . .] as both a 'Bank of America Platinum Plus Visa' credit card and as a 'Bank of America-FIA Card Services, N.A.' credit card." *See* Dkt. 13, p.4. There is no conflict.  First, under the section entitled "Words Used Often In This Agreement," the Agreement defines "'we', 'us', 'our' [ . . .] means FIA card Services, N.A., also known as Bank of America." Dkt. 10, Ex.2, p. 6. FIA is a wholly owned subsidiary of Bank of America Corporation and an affiliate of Bank of America, N.A.

[2]   Plaintiff asserts in their Complaint, Paragraphs 6 and 7, as part of the foundation of the FDCPA claim, that the "Debt was for a credit card, on which charges were incurred primarily for the personal use of Plaintiff and/or for household expenditure" and "Plaintiff was a 'consumer' as that term is defined by 15 U.S.C. §1692a(3)."  Furthermore, it is disingenuous for Plaintiff to raise doubt as to the existence of the underlying card agreement between herself and Bank of America or the assignment of the account to Defendant's client CACH, as the Plaintiff pays $158.00 each month to the Defendant towards the account and has done so since July 2012.

[3]   The original issuer National Bank, in response to Plaintiff's request (written, phone or via the internet) for a credit account, issued pursuant to Federal Law a credit card in Plaintiff's name under its assigned account number.  15 U.S.C. §1642 and Reg. Z (12 CFR) §226.12(a)(1).  Plaintiff reviewed and used (or authorized use of) the card and thereby became obligated to pay for the charges incurred with the card.  15 U.S.C. §1602(J)(K) and Reg. Z §226.12(a)(2), fn. 21.  The bank is required for each credit application to send and disclose the terms and conditions inclusive of a statement of billing rights with a credit member agreement prior to any use of the credit (Reg. Z 226.5(b)(1)).  The timing of getting the credit agreement (contract) to the consumer prior to a charge is subject to compliance audit by the OCC.  (Comptrollers Handbook, December, 2006, Consumer Compliance Examination, page 49.  Timing of Disclosures, OCC Administration of National Banks Worksheets #10, pg. 81 and #11, pg. 83). The National Banks are charged with audited compliance of TILA and Regulation Z.  It is Regulation Z which guides the national bank as to what disclosures must be made on "open end credit plans" (credit cards) to the consumer prior to the first transaction, as to monthly billing statements and through to charge off of the account. (Reg. Z, 226.6(a)).  Failure to comply will expose the banks to civil penalties (Reg. Z 130) and criminal penalties for a willful violation (Reg. Z 112).  Defendant asks the Court to take judicial notice of such Federal Law and their Regulations, which mandate the required disclosures and to apply them in this action.

of debt." *Credigy v. Townsley*, 2008 Mich. App. LEXIS 2056 (Mich. Ct. App. Oct. 16, 2008). The issuance of a credit card constitutes a credit offer, and the use of the card constitutes acceptance of the offer. *Id.* Therefore, by using the Bank of America credit card issued to her, Plaintiff accepted the terms of the Bank of America credit card agreement.[4]

Additionally, the Agreement expressly states, in pertinent part, "[t]he terms of this Agreement apply to you if any of you applied for and were granted an account, used the account, maintained the account, and/or otherwise accepted the account. You agree to the terms and conditions of this Agreement." *See* Dkt. 10, Ex.2, p. 6. Furthermore, Plaintiff's argument that she never signed or accepted any Arbitration agreement is again contradicted by the express terms of the arbitration agreement which specifically states, "[t]his Arbitration and Litigation provision applies to you **unless** you were given the opportunity to reject the Arbitration and Litigation provisions and **you did so reject them in a manner and timeframe required**." *Id.* (emphasis added). Plaintiff has never alleged that she rejected the arbitration clause and, as a result, cannot dispute her assent to it.

### B. *The Plaintiff Does Not Contest That the Arbitration Agreement Clearly and Unmistakably Delegates Contract Enforceability Issues to an Arbitrator.*

Alternatively, Plaintiff argues that if this Court finds that there is a valid arbitration agreement,[5] Defendant's motion must be denied as the Agreement's scope does not cover the instant matter. Plaintiff's argument fails under the express terms of the contract and as a matter of law, as the Supreme Court has held that the issue of arbitrability is for an arbitrator to decide when evidence clearly demonstrates that it was within the parties' agreement. *Rent-a-Center, West, Inc v. Jackson*, 130 S Ct 2772, 2778 (2010).

---

[4] In fact, it is the existence of the issuance of this form of credit to the Plaintiff that provides the basis for her consumer based FDCPA claims and without the existence of said extension of credit to the Plaintiff, all of Plaintiff's FDCPA claims would fail as a matter of law.

[5] Plaintiff points to Defendant's response to Admission No. 2 as support to the assertion that no agreement existed between the Plaintiff and Bank of America n/k/a FIA. However, the response was stated as an objection, preserving the rights of the Defendant pending a decision on this motion. *See* Def Ex. C.

In this case, the Arbitration clause at issue clearly and expressly addresses the arbitrability issue with a delegation clause that states, "[t]he arbitrator shall resolve any Claims, *including the applicability of this Arbitration and Litigation Section or the validity of the entire Agreement* [. . .]" *See* Dkt. 10, Ex.2, p. 10 (emphasis added). Similarly, in *Rent-a-Center,* the Supreme Court also encountered an arbitration agreement that clearly and unmistakably delegated arbitrability disputes to the arbitrator. *Id.* at 2778. In *Rent-a-Center,* because the Party opposing arbitration directed its enforceability challenge to the arbitration clause as a whole, rather than specifically at the delegation clause, the Court held that it was for the arbitrator to determine whether the arbitration agreement as a whole was enforceable as the parties so agreed. *Id.* 2779. As was the case in *Rent-a-Center,* nowhere in Plaintiff's opposition to Defendant's instant Motion did she contest, or even mention the delegation provision.[6] Rather, Plaintiff's Response brief pays scant attention to controlling Supreme Court precedent and instead erroneously focuses on arguments over the interpretation of the Arbitration Agreement's use of "agent," "debt collector," and "if and only if." Accordingly, because there is no dispute as to the delegation clause in the Arbitration agreement, Defendant's Motion must be granted and all arbitrability issues are exclusively for the arbitrator to decide.

**C. Defendant's Election of Arbitration was both Procedurally Proper and Timely in this Action.**

Lastly, the Plaintiff argues that Defendant waived its right to enforce the Arbitration Agreement because "the procedural history of this matter" supports such a finding. *See* Dkt. 13, p. 11. Defendant first had an ethical obligation to acquire a copy of the Plaintiff's specific Bank of America Agreement in order to file its instant Motion to Compel. Defendant formally asserted its Arbitration rights under the Agreement as soon as it became fully aware of their specific terms.

---

[6] "Nowhere in his opposition to Rent–A–Center's motion to compel arbitration did he even mention the delegation provision. Rent–A–Center noted this fact in its reply: "[Jackson's response] fails to rebut or otherwise address in any way [Rent–A–Center's] argument that the Arbitrator must decide [Jackson's] challenge to the enforceability of the Agreement. *Thus, [Rent–A–Center's] argument is uncontested.*" *Id.,* at 50 (emphasis in original). Rent-A-Center, West, Inc. v. Jackson, 130 S.Ct. 2772, 2779 (U.S.,2010).

3

Furthermore, the explicit terms of the arbitration agreement provide that the request could be made any time prior to entry of judgment. Defendant, therefore, could only assert the possibility of an election request in its Answer, Joint Scheduling Plan and discovery responses up until the Plaintiff's agreement was acquired and reviewed.[7]

Procedural arbitrability disputes, like timeliness and waiver, are for the arbitrator to decide. *United Steel Workers of America, AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.,* 505 F.3d 417, 420 (6th Cir. 2007). Additionally, waiver of a contractual arbitration provision should not be lightly inferred given the strength of the presumption in favor of arbitration. *Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 450 (6th Cir.2005). Two courses of conduct may waive an agreement to arbitrate, "(1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *O.J. Distrib., Inc. v. Hornell Brewing Co.,* 340 F.3d 345, 356 (6th Cir.2003)); *see Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat,* 289 F.3d 434, 438 (6th Cir.2002). The Parties' Arbitration Agreement expressly states that, "Arbitration may be selected *at any time* unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration." *See* Dkt. 10, Ex. 2, p. 15). No judgment has been rendered in this case. The Plaintiff fails to describe how the relative timing of the requirement of initial disclosure as required by FRCP 26 and response to a discovery deadline resulted in actions "inconsistent" with Defendant's right to elect arbitration.

However, despite the fact that Defendant asserted its intent to arbitrate this matter in both its Answer and Affirmative Defenses, Plaintiff attempts to support her waiver argument by alleging that "Plaintiff has sustained prejudice" because she "spent considerable time and effort" preparing

---

[7] Note: per Federal Law regarding the issuance and servicing of credit cards; at all times relevant hereto, the Plaintiff was in possession of the agreement and/or, at the very least, was formally made aware of the existence of arbitration agreement.

4

her FRCP 26(a) initial disclosures. First, under the express terms of the agreement, Plaintiff's argument fails as Plaintiff never contends that she experienced "substantial prejudice." Nor could Plaintiff's submission of her initial disclosures constitute "substantial prejudice." Additionally, any perceived competitive advantage Defendant gained from her initial disclosures would be offset by the fact that Defendant also provided Plaintiff with its FRCP 26(A) disclosures. Case law also suggests that the passage of four months time, as alleged, would not incur the type of prejudice required for waiver.[8]

### III. CONCLUSION

Plaintiff entered into an agreement for a credit card account with Bank of America. By accepting and using the Bank of America card, Plaintiff agreed to the terms and conditions of the applicable written credit card agreement. The terms of the credit card Agreement contained an elective arbitration provision. The Arbitration provision clearly and unmistakably delegated all issues of arbitrability to be decided by the arbitrator. As a result, under the terms of the Parties' Arbitration provision, Defendant respectfully requests that this court enter an order dismissing this lawsuit in its entirety so the parties may arbitrate the claims as outlined in the Bank of America Agreement.

Dated: December 5, 2012      Respectfully submitted,
s/ Jason R. Sims
JASON R. SIMS (P66048)
G. REYNOLDS SIMS & ASSOCIATES, P.C

---

[8] As stated in *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 717-18 (6th Cir. 2012), "[t]he filing of an answer is, [. . .], the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue. . . [A]n enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit. It is therefore unsurprising that defendants routinely raise the right to arbitration in their answer, whether it is technically required by Rule 8 or not. *See Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420 (5th Cir.1985) ('Although [defendant] did not move for a stay pending arbitration until approximately eight months into the litigation, in its answer to the original complaint, [defendant] did seek to have the action dismissed because the dispute was covered by a valid and enforceable arbitration clause thereby putting [plaintiff] on notice as to its desire to arbitrate the matter.'); *Hilti, Inc. v. Oldach,* 392 F.2d 368, 371 (1st Cir.1968) (noting that 'defendant's answer, [. . .] served notice on plaintiff of the arbitration defense'); *see also Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.,* 427 F.2d 924, 929 n. 5 (5th Cir.1970) ('Once the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver.')."

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TENNIE GREEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:12-cv-12488-DML-MJH |
| ) | Magistrate Judge Michael J. Hluchaniuk |
| v. ) | Hon. District Judge Nancy G. Edmunds |
| ) | *REQUEST FOR ORAL ARGUMENT* |
| G. REYNOLDS SIMS & ASSOC., P.C., ) | |
| Defendant. ) | |
| _____/ | |

## NOTICE OF FILING

**To:**

| **David M. Marco** | **Jason R. Sims** |
|---|---|
| Larry P. Smith & Assoc., LTD | G. Reynolds Sims Assoc., P.C. |
| 205 N. Michigan Avenue., Suite 2940 | 2075 W. Big Beaver Road, Suite 200 |
| Chicago, IL 60601 | Troy, MI 48084 |
| Tel: 312-546-6539 | Tel: 248-643-4440 |
| Fax: 888-418-1277 | Fax: 248-643-4441 |
| Email: dmarco@smithlaw.us | Email: jrsims@grsims.com |

PLEASE TAKE NOTICE THAT ON **December 5, 2012**, there was filed in the United States District Court for the Eastern District of Michigan, **Defendant's Reply Brief in Support of its Motion for Summary Judgment to Compel Arbitration**, a copy of which is attached hereto and hereby served upon you.

Dated: December 5, 2012  By  *s/ Jason R. Sims*_____
G. Reynolds Sims Assoc., P.C.
2075 W. Big Beaver Road, Suite 200
Troy, MI 48084
Tel: 248-643-4440
Fax: 248-643-4441
Email: jrsims@grsims.com

i

# CERTIFICATE OF SERVICE

I, Jason R. Sims, certify that on **December 5, 2012**, I caused to be served a copy of **Defendant's Reply Brief in Support of its Motion for Summary Judgment to Compel Arbitration**, upon the above named individual(s) electronically via the Case Management/Electronic Case Filing system ("ECF").

Dated: December 5, 2012     By     *s/ Jason R. Sims*
G. Reynolds Sims Assoc., P.C.
2075 W. Big Beaver Road, Suite 200
Troy, MI 48084
Tel: 248-643-4440
Fax: 248-643-4441
Email: jrsims@grsims.com

ii