UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TENNIE GREEN,

    Plaintiff,

v.

G. REYNOLDS SIMS & ASSOC., P.C.,

    Defendant.

                                   /

Case No. 12-12488

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE ARBITRATION CLAUSE AND COMPEL ARBITRATION [10]**

This matter, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, comes before the Court on Defendant G. Reynolds Sims & Associates, P.C. ("Defendant Law Firm")'s motion to enforce an arbitration clause in Plaintiff's credit card agreement.[1]  For the reasons stated below, this Court GRANTS Defendant's motion and STAYS this matter pending arbitration.

**I.    Facts**

Plaintiff brings this FDCPA action alleging that she is a consumer, as defined in the FDCPA, 15 U.S.C. § 1692a(3), that Defendant is a law firm engaged in the collection of a debt, that the debt was for a credit card that Plaintiff used primarily for personal and/or household expenditures, and that Defendant violated the FDCPA in its attempts to collect a debt she allegedly owed.  (Pl.'s Compl., ¶¶ 5-8, 105.)  Defendant responds as follows.

---

[1]Although titled as a motion for summary judgment, the Court previously ruled that this motion is to be considered as a motion to compel arbitration.  (11/02/12 Order.)

On July 15, 2009, Plaintiff entered into a credit card agreement with Bank of America - FIA Card Services, N.A. ("Bank of America") that had an arbitration clause.

On January 31, 2011, Bank of America charged-off Plaintiff's credit card account after she defaulted on her payment obligations.

On March 30, 2012, CACH, LLC purchased Plaintiff's charged-off credit card account from Bank of America. As CACH, LLC's agent/attorneys, Defendant Law Firm made attempts to collect the credit card debt allegedly owed by Plaintiff.

The Credit Card Agreement that Plaintiff allegedly entered into by using the Bank of America Platinum Plus credit card has a broad arbitration clause that covers the FDCPA claims Plaintiff's asserts in her complaint. The provisions in that arbitration clause that are relevant here are as follows.

> **ARBITRATION AND LITIGATION**
> This Arbitration and Litigation provision applies to you unless you were given the opportunity to reject the Arbitration and Litigation provisions and you did so reject them in the manner and timeframe required. If you did reject effectively such a provision, you agreed that any litigation brought by you against us regarding this account or this Agreement shall be brought in a court located in the State of Delaware.
>
> Any claim or dispute ("Claim") by either you or us against the other, or against the employees, <u>agents</u> or assigns of the other, <u>arising from or relating in any way to this Agreement</u> or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), <u>shall</u>, <u>upon election by either you or us</u>, <u>be resolved by binding arbitration</u>. <u>The arbitrator shall resolve any Claims, including the applicability of this Arbitration and Litigation Section or the validity of the entire Agreement</u> or any prior Agreement, except for any Claim challenging the validity of the Class Action Waiver, which shall be decided by a court.
>
> \* \* \* \* \*
>
> Arbitration shall take place before a single arbitrator and on an individual basis without resort to any form of class action. <u>Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration</u>.

2

* * * * *

This Arbitration and Litigation Section applies to all Claims now in existence or that *may* arise in the future. This Arbitration and Litigation Section shall survive the termination of your account with us as well as any voluntary payment of the debt in full by you, any bankruptcy by you or sale of the debt by us.

For the purposes of this Arbitration and Litigation Section, "we" and "us" means FIA Card Services, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account, and all of their officers, directors, employees, agents and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits or services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collectors and all of their officers, directors, employees and agents) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

**YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND US FROM HAVING A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH COURT, OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS. EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION IF YOU OR WE ELECT TO ARBITRATE**.

(Def.'s Mot., Ex. 1, Bank of America Platinum Plus Credit Card Agreement at 15-16 (emphasis added).) The Credit Card Agreement also has a section titled "We May Sell Your Account," providing that:

We may at any time, and without notice to you, sell, assign or transfer your account, any sums due on your account, this Agreement, or our rights or obligations under your account or this Agreement to any person or entity. The person or entity to whom we make any such sale, assignment or transfer shall be entitled to all of our rights and/or obligations under this Agreement, to the extent sold, assigned or transferred.

(*Id.* at 14.) In addition, the Agreement also provides that it "is governed by the laws of the State of Delaware (without regard to its conflict of laws principles) and by any applicable federal laws." (*Id.*)

## II. Analysis

Defendant's motion seeks to enforce the arbitration clause in a Credit Card Agreement between Plaintiff and Bank of America, arguing that Plaintiff's FDCPA claims fall within the scope of the broad arbitration clause contained in Plaintiff's Credit Card Agreement. In response, Plaintiff first raises an argument that questions whether the entire Credit Card Agreement is enforceable, i.e., that Defendant cannot show that a Credit Card Agreement exists absent Plaintiff's signature evidencing acceptance. Plaintiff next raises arguments that assume a valid Credit Card Agreement exists between her and Bank of America but question whether the arbitration clause is applicable under the facts and circumstances asserted here. Specifically, Plaintiff argues that the arbitration clause does not apply here because (1) Defendant is a third-party debt collector and the only named defendant in a complaint that raises FDCPA claims; and (2) Defendant waived its right to enforce arbitration by delaying four months before filing this motion demanding arbitration and thus prejudicing Plaintiff who, pursuant to Rule 26(a)(1), provided Defendant with initial disclosures about witnesses' expected testimony.[2] Each of these arguments is addressed below after a brief discussion of the legal principles governing the enforcement of arbitration clauses.

---

[2]Plaintiff does not argue that her FDCPA claims would fall outside the scope of the Arbitration and Litigation Section in the Credit Card Agreement. Accordingly, there is no need to address an argument that does not exist.

### A. General Principles

Defendant's motion relies on the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, which provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court recently observed, the FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, ___ U.S. ___, 130 S. Ct. 2772, 2776 (2010) (internal citations omitted). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). However, just "[l]ike other contracts," a party can seek to invalidate them by raising "applicable contract defenses." *Rent-A-Center*, 130 S. Ct. at 2776.

The FAA "also establishes procedures by which federal courts implement § 2's substantive rule." *Id.* Section 4 applies here. "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.' The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Id.* (quoting 9 U.S.C. § 4).

"Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714. But a party

"cannot be required to submit to arbitration any dispute that the party has not agreed to so submit." *Bratt Enterprises, Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003); s*ee also Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (internal citations omitted) (noting that "arbitration under the Federal Arbitration Act is a matter of consent, not coercion").

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

When determining "whether the arbitration clause itself was validly obtained," state contract law is applied, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003). State law inconsistent with the FAA's "broad principle of enforceability" of arbitration agreements, however, is pre-empted by federal arbitration law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996); *Stout*, 228 F.3d at 716.

If a court determines that the cause of action is covered by an arbitration clause, Section 3 of the FAA provides that "it must stay the proceedings until the arbitration process is complete." *Fazio*, 340 F.3d at 392 (citing 9 U.S.C. § 3). Courts have held, however, that when the court determines that all the claims in a cause of action are to be

6

submitted to arbitration, it may dismiss, rather than stay the action because "staying the action will serve no purpose." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). *See Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, *4 (6th Cir. Oct. 19, 1999) (rejecting an argument that dismissal was improper, citing *Alford* with approval, and holding that dismissal is proper when all claims in a suit are submitted to arbitration).

### B. The Credit Card Agreement Has An Arbitration Section With A Delegation Provision

Just as in *Rent-A-Center*, the Agreement at issue here provides for the arbitration of a broad category of disputes and has a provision delegating to the arbitrator the authority to decide specific gateway questions of arbitrability. *See Rent-A-Center*, 130 S. Ct. at 2777.[3] Specifically, the Arbitration and Litigation section of the Credit Card Agreement states that "[a]ny claim or dispute ('Claim') by either you or us against the other . . . arising from or relating in any way to this Agreement . . . or your account . . . shall, upon election by either you or us, be resolved by binding arbitration." (Def.'s Mot., Ex. 1, Credit Card Agree. at 15.) The Arbitration section also has a delegation provision stating that "[t]he arbitrator shall resolve any Claims, including <u>the applicability of this Arbitration and Litigation Section</u> or <u>the validity of the entire Agreement</u> . . . ." (*Id.*) (emphasis added).

As the Supreme Court recognized in *Rent-A-Car*, "[t]he delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Car*, 130 S. Ct. at 2777. The Court observed that it had previously held "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed

---

[3]In *Rent-A-Center*, the underlying contract was itself an agreement to arbitrate claims arising out of the respondent's employment with petitioner, but the Supreme Court clarified that "makes no difference" to its analysis and holding. 130 S. Ct. at 2779.

7

to arbitrate or whether their agreement covers a particular controversy." *Id.* (citing cases). It explained that "[t]his line of cases merely reflects the principle that arbitration is a matter of contract." *Id.* "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.*

Here, Defendant asks the Court to enforce both the arbitration section and the delegation provision within the Arbitration and Litigation section. As discussed below, the Court must consider Plaintiff's arguments against enforcement; specifically, whether they address the contract as a whole, the arbitration section, or the delegation provision.

### C. Plaintiff's Challenges to the Contract As Whole

The Supreme Court in *Rent-A-Center* distinguished between challenges that question the validity of an agreement to arbitrate and those that "challenge[ ] the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Center*, 130 S. Ct. at 2778 (internal quotation marks and citation omitted). It observed that it has "held that only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* (citing cases).

In her response, Plaintiff raises several arguments challenging the validity of the contract as a whole, *e.g.*, there is no signed Credit Card Agreement and thus no evidence of Plaintiff's acceptance; and in light of Defendant's admission that Plaintiff does not owe a debt to Bank of America, there is no evidence that a Credit Card Agreement existed

between Bank of America and Plaintiff. (Pl.'s Resp. at 3-6.) As the Supreme Court observed in *Rent-A-Center*, these challenges are not relevant to this Court's determination whether the arbitration agreement in the Credit Card Agreement is enforceable. Moreover, like the petitioner in *Rent-A-Center*, Plaintiff fails to mention, let alone challenge the delegation provision that expressly provides that "[t]he arbitrator shall resolve any Claims, including . . . the validity of the entire Agreement. . . ." (Def.'s Mot,, Ex. 1, Credit Card Agree. at 15.) Thus, Defendant's arguments that the delegation provision is enforceable is uncontested. Accordingly, because Plaintiff failed to challenge the "delegation provision specifically, [the Court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole to the arbitrator." *Rent-A-Center*, 130 S. Ct. at 2779.

### C. Plaintiff's Remaining Challenges Question Whether The Arbitration Section of the Credit Card Agreement Applies to Defendant

Plaintiff's additional arguments do not question the validity of the Credit Card Agreement as a whole. Rather, Plaintiff assumes that a valid Credit Card Agreement with an arbitration section exists but then raises arguments challenging whether that arbitration section applies to Defendant. Specifically, Plaintiff argues that the arbitration clause does not apply here because (1) Defendant is a third-party debt collector and the only named defendant in a complaint that raises FDCPA claims arising out of a Credit Card Agreement she had with a different entity -- Bank of America (Resp. at 6-9); and (2) Defendant waived his right to enforce arbitration by delaying four months before filing this motion demanding arbitration and thus prejudicing Plaintiff who, pursuant to Rule 26(a)(1), provided Defendant with initial disclosures about witnesses' expected testimony (Resp. at 9-15).

Once again, Plaintiff's arguments fail to mention, let alone challenge the delegation provision that expressly provides that "[t]he arbitrator shall resolve any Claims, including the applicability of this Arbitration and Litigation Section . . . ." (Def.'s Mot., Ex. 1, Credit Card Agree. at 15.) Accordingly, because Plaintiff failed to challenge the "delegation provision specifically, [the Court] must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge" to the applicability of the Arbitration and Litigation Section "to the arbitrator." *Rent-A-Center*, 130 S. Ct. at 1229.

Even if there were no provision in the arbitration clause that delegated the task of determining whether the arbitration clause applied to the Defendant despite a four month delay in demanding arbitration, there is a procedural provision within the Arbitration section that addresses this issue of waiver. It provides that:

> Arbitration shall take place before a single arbitrator and on an individual basis . . . . Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration.

(Def.'s Mot., Ex. 1, Credit Card Agree. at 15.)

Plaintiff argues in her response that she was prejudiced by Defendant's delay in demanding arbitration; and in its reply, Defendant argues that Plaintiff cannot show that any prejudice she suffered by the delay was substantial. As the Sixth Circuit recently observed in *United Steel Workers of America, AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.*, the Supreme Court has held that, absent an agreement to the contrary, procedural questions of arbitrability like laches, waiver, time limits, and estoppel are for arbitrators to decide. 505 F.3d 417, 420-22 (6th Cir. 2007) (discussing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964) and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,

10

84-85 (2002)). Thus, even without the delegation provision in the Arbitration and Litigation Section, binding case law compels the conclusion that Plaintiff's waiver argument is for the arbitrator to decide, not the Court.

### III. Conclusion

For the above-stated reasons, Defendant's motion to enforce arbitration clause and compel arbitration is GRANTED, and this matter is STAYED pending arbitration.


       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: March 25, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 25, 2013, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager